```
 1                  UNITED STATES BANKRUPTCY COURT
 2                  CENTRAL DISTRICT OF CALIFORNIA
 3                            --oOo--
 4  In Re:                         ) Case No. LA11-24572-BR
                                   )
 5  FERDINAND GERTES,              ) Los Angeles, California
                                   ) Wednesday, May 9, 2012
 6          Debtor.                ) 2:00 p.m.
                                   )
 7  _____)
                                     ADV. 11-02484 GARCIA V.
 8                                   GERTES, ET AL.

 9                                   TRIAL RE AMENDED COMPLAINT
                                     OBJECTING TO DISCHARGE
10

11                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE BARRY RUSSELL
12                 UNITED STATES BANKRUPTCY JUDGE

13  APPEARANCES:

14  For the Plaintiff:             EILEEN KEUSSEYAN, ESQ.
                                   21300 Victory Boulevard
15                                 Suite 660
                                   Woodland Hills, California
16                                    91367
                                   (818) 444-5192
17

18  For the Defendant:             DAVID S. HAGEN, ESQ.
                                   16830 Ventura Boulevard
19                                 Suite 500
                                   Encino, California 91436
20                                 (818) 990-4416

21  Court Recorder:                Cassie Elzy
                                   United States Bankruptcy Court
22                                 Edward R. Roybal Federal
                                      Building
23                                 255 East Temple Street
                                   Los Angeles, California 90012
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service
```

*Briggs Reporting Company, Inc.*

ii

1  Transcriber:                    Briggs Reporting Company, Inc.
                                   6336 Greenwich Drive, Suite B
2                                  San Diego, California 92122
                                   (310) 410-4151
3

```
                                                                       iii

 1                         I N D E X

 2  WITNESSES              DIRECT   CROSS   REDIRECT   RECROSS

 3  Emma Dutro               --       4        5          7
```

1

1    LOS ANGELES, CALIFORNIA  WEDNESDAY, MAY 9, 2012  2:00 PM
2                              --oOo--
3        (Call to order of the Court.)
4            THE CLERK:  Number one, Ferdinand Gertes.
5            MR. HAGEN:  Good afternoon, your Honor.  David
6 Hagen on behalf of the Defendants, Mr. Gertes and Ms. Dutro.
7            THE COURT:  All right.
8            MS. KEUSSEYAN:  Good afternoon, your Honor.
9 Eileen Keusseyan on behalf of Plaintiff, Miguel Garcia.
10           THE COURT:  All right.  Let me ask you this.  I've
11 set these as separate trial, the 523 and the 727, but this
12 particular case I'll throw something out to you.  Now that
13 I've actually read your briefs and all the facts, including
14 the declarations, if you'd like to hear both today, I'll be
15 happy to do it.  If you just want to do -- and you both have
16 to agree.  If you just -- depending on what I do on the 727.
17           For instance, if I rule in the Debtor's favor on
18 the 727, then you'll have to come back.  Since it seems
19 pretty much the same evidence, but again this is a question
20 because I -- because if you're not prepared or don't want to
21 do it, that's fine.  Given now what I see, the testimony
22 really is very similar, almost -- not totally the same, but
23 very similar in one as the other.  Would anybody want to do
24 that or not, or just stick to the 727?  There are only two of
25 you here as far as the parties.

2

1     MR. HAGEN:  It's the Plaintiff's case, so I'll let
2 her decide first.
3     MS. KEUSSEYAN:  It's -- we can proceed forward
4 into both of them, your Honor.
5     THE COURT:  All right.
6     MR. HAGEN:  That's fine.
7     THE COURT:  Okay.  I'm here anyway.  But, I
8 figured given what I've seen it's going to be a rehash
9 anyway, assuming we get to it.  All right.  Then, what we
10 have is -- I have the briefs.  I have the declarations.  So,
11 you kind of have to adjust your thinking a little bit.  The
12 Plaintiffs -- excuse me.  Let me get all the briefs.  I have
13 the Plaintiff's trial brief, Plaintiff's trial declaration
14 and Defendant's trial, and request for judicial notice which
15 is okay.  Let's see.  I was looking for the Defendant's
16 declaration but it's attached, at least my copy is attached
17 to that so I couldn't find it.  I read it, but I just
18 couldn't find it this minute.  So, that's it.  We basically
19 have the two declarations.
20     MS. KEUSSEYAN:  That's all we have, your Honor.
21     THE COURT:  Okay.  So, where we are now it's as
22 if -- that's why I try these this way so there's no
23 surprises.  We have the Plaintiff -- the Plaintiff has
24 testified.  So, now the question is -- it's as if on the
25 stand testified.  The question is now do you wish to cross

3

1 examine the Plaintiff?
2         MR. HAGEN:  I have no questions for the Plaintiff,
3 your Honor.
4         THE COURT:  All right.  So, now we have the
5 Defendant.  There are only two witnesses, right?
6         MS. KEUSSEYAN:  That's -- we only have --
7         THE COURT:  So, we have the Plaintiff's testimony
8 and the Defendant.  So, the question is now, the only one
9 left, do you wish to cross examine the Defendant?
10        MS. KEUSSEYAN:  I have a couple of questions for
11 her, your Honor.
12        THE COURT:  All right.  Fine.  Any questioning and
13 talking we do if you could come to the podium I'd appreciate
14 it.
15              EMMA DUTRO - DEFENDANT - SWORN
16        THE COURT:  You're going to have to speak up.
17 Have a seat.  Could you state your name and please -- you can
18 have a seat, and spell -- speak into the mic there so we
19 can -- it sounds like you have a soft voice so you're going
20 to have to speak up.
21        THE WITNESS:  Okay.  My name is Emma Dutro.  It's
22 E-M-M-A  D-U-T-R-O.
23        THE COURT:  All right, Ms. Dutro.  Okay, counsel.
24 //
25 //

                                                                    4

1                        CROSS EXAMINATION
2 BY MS. KEUSSEYAN:
3 Q     Good afternoon.
4 A     Good afternoon.
5 Q     You've stated in your declaration and in your schedules
6 that you own one third interest in the Carson property, is
7 that correct?
8 A     Yes.
9 Q     Who owns the other two thirds interest?
10 A    It would be Steve Saiz (phonetic) and Bayside Apostolic
11 Center (phonetic).
12 Q    Could you tell us how you made that transfer?
13 A    Steve Saiz and Bayside Apostolic Center.  Bayside is
14 the church where I go to.
15 Q    Do they have a deed of trust in the property?  Do they
16 have some sort of lien on the property?  How is it that
17 they're identified as two thirds owner of the property?
18 A    They put money up front.  They were the one who put the
19 money up front, and I took the title.
20 Q    Isn't it true that on the tax documents and with the
21 County Assessor's office, and all the official places, you
22 are listed as 100 percent owner of the property?
23 A    Yes, and I took the title with understanding within the
24 three of us that they are putting the down payment -- they
25 are taking two third and I'm taking one third.

Case 2:11-ap-02484-BR    Doc 21    Filed 07/30/12    Entered 07/30/12 11:22:32    Desc
Main Document    Page 8 of 19

5

1  Q     So, this was from the outset or did you transfer title
2  somewhere along the way when you decided not to proceed with
3  the development of the condominium unit?
4  A     There's no title being transferred yet to this time.
5  Q     So, you own 100 percent of the property on title?
6  A     I took the title 100 percent.
7  Q     Thank you.
8  A     There are three of us --
9  Q     Thank you.  You've answered the question.
10           THE COURT:  You've answered the question.
11           MS. KEUSSEYAN:  I have no further questions.
12           THE COURT:  All right.  Do you have any --
13 remember, this is both cases, the 523 and 727.  It's okay I'm
14 not saying you need anymore questions.  I just want to make
15 sure.  And for you, counsel?
16           MR. HAGEN:  No.  Well, let me ask one follow up
17 question.
18           THE COURT:  All right.
19                    REDIRECT EXAMINATION
20 BY MR. HAGEN:
21 Q     Let me see if I can clarify.  When you bought the
22 property, what was the purpose of the purchase?
23 A     To -- for development.
24 Q     And did that development ever happen?
25 A     No.

6

1  Q     Why?
2  A     The real estate market collapse.
3  Q     Before the real estate market collapsed, did you make
4  any efforts to begin the development process?
5  A     Very much so, yes.
6  Q     What did --
7          MS. KEUSSEYAN:  I'm going to object, your Honor.
8  This is going into direct testimony.  This is already all
9  stated in the declaration.
10         THE COURT:  Well, I think you're right.  The cross
11 was pretty brief.
12         MR. HAGEN:  That's fine.  Let me just ask a
13 question about her testimony before.
14 BY MR. HAGEN:
15 Q     You took title in your name, is that correct?
16 A     In my name, yes.
17 Q     And it was your understanding that the people who put
18 up the deposit for the purchase would have a share in the
19 development profits, is that correct?
20 A     Yes.
21 Q     And your share was one third?
22 A     Yes.
23         MR. HAGEN:  Nothing further.
24         THE COURT:  All right.  Anything.
25         MS. KEUSSEYAN:  Just one quick question.

                                                                    7

1           THE COURT:  Sure.  If you'd come to the podium.
2                      RECROSS EXAMINATION
3  BY MS. KEUSSEYAN:
4  Q    Why did you not disclose that in the schedules?
5  A    It was disclosed.
6  Q    Your ownership was disclosed as one third, but you just
7  testified that on title you are a 100 percent, but you're
8  only one third entitlement is for the profits, correct?
9  A    One third interest was disclosed.  One third --
10 Q    Of the profits, correct?
11 A    Of the property and the profit.
12          MS. KEUSSEYAN:  That's it, your Honor.  Thank you.
13          THE COURT:  All right.  Anything else?
14          MR. HAGEN:  Nothing further, your Honor.
15          THE COURT:  All right.  You may step down.
16          THE WITNESS:  Thank you.
17          THE COURT:  All right.  Your case.  It's shorter
18 than I anticipated.
19          MS. KEUSSEYAN:  It's extremely short, your Honor.
20          THE COURT:  Would you come to the podium please?
21          MS. KEUSSEYAN:  It is a short case, your Honor.
22 We've stated everything on the declarations, and Plaintiff
23 rests.
24          THE COURT:  Well, do you want to argue it a bit?
25          MS. KEUSSEYAN:  I can argue it, sure.

*Briggs Reporting Company, Inc.*

8

1        THE COURT: You have two. You have the 523, as
2 well as the 727. Let's do the 727 first.
3        MS. KEUSSEYAN: Okay. Well, the 727 is as we've
4 declared in our declarations. She happens to own -- under
5 the first part, she failed to disclose the fact that she owns
6 100 percent interest in the property. If you look at her
7 schedules, she keeps listing it as one third. We've checked
8 all the records, and she's testified that she's a 100 percent
9 owner. So, under oath, she failed to disclose the truth of
10 the matter that she's a 100 percent owner of the property.
11 She was able to obtain all that utilizing Mr. Garcia's
12 proceeds which she fraudulently obtained as we decided -- as
13 we discussed in the declaration.
14        Based on that, we ask that discharge not be
15 granted on the 727.
16        THE COURT: And also, 523.
17        MS. KEUSSEYAN: For the same argument, your Honor.
18 There isn't anything --
19        THE COURT: Well, the issues are slightly
20 different. I mean the parties are the same. The issues on
21 the 523 are a little more complicated, but that's okay. I've
22 read your brief.
23        MS. KEUSSEYAN: Okay. Then, we submit on the
24 brief.
25        THE COURT: All right. Mr. Hagen?

*Briggs Reporting Company, Inc.*

9

1          MR. HAGEN:  Your Honor, let's start with the 727.
2          THE COURT:  All right.
3          MR. HAGEN:  An objection of discharge requires
4 proof that the Debtor lied in his or her bankruptcy
5 schedules, and the burden of proof lies with the Plaintiff.
6 His declaration, Mr. Garcia's declaration, says merely that
7 he believes she has retained a piece of property from the
8 development deal which she receives monthly income, and has
9 failed to disclose the property interest or the income in her
10 bankruptcy schedule.  The reality, though, as evidenced in
11 the request for judicial notice, shows that schedule A says
12 as follows, a one third interest in a single family residence
13 at 138 West 223rd Street, Carson 90745.

14          Debtor's own a one third interest in a single
15 family residence at 138 West 223rd Street, Carson 90745 with
16 Steve Saiz and Bayside Apostolic Center, each of whom own a
17 one third interest.  The property was acquired by the owners
18 in 7/07, that's July of '07, for 899 with a $200,000 down
19 payment put up by the other owners.  The intent was to
20 develop the property by building condos, but the real estate
21 market changed while those plans were being developed.  The
22 existing house have five bedrooms, three baths and
23 approximately 2,000 square feet, and is occupied by three
24 renters who pay a total of $2,000 per month.  The current
25 fair market value of the property per azilo.com (phonetic)

10

1 search on March 23rd '11, which is just prior to the filing,
2 is 467.  The property is subject to a first trust deed in
3 favor of Chase with a balance of 743, and a municipal
4 development loan of 200,000, which does not bear interest and
5 would be due upon the sale of the property.
6          Similarly, the rental income and the mortgage
7 obligation are reflected on schedules I and J respectively.
8 So, in intending that she didn't disclose it, either the
9 Plaintiff didn't read the bankruptcy petition or failed to
10 understand what was in it, but he hasn't carried his burden
11 of proof that the Debtor lied or misled the Court in failing
12 to disclose those assets or income.  In fact, I would submit
13 that the Debtor's disclosure in the petition about her
14 interest in the property is far more inclusive than an
15 average petition.
16          Plaintiff further contends that she misrepresented
17 her interest at one third instead of a 100 percent.  That
18 distinction is without merit because the schedules put the
19 trustee on notice of the Debtor's interest if she cared to
20 investigate, but even that -- even if she owned a 100 percent
21 interest, the property is so far under water that none of the
22 owner's interest have any value.  And with respect to the 523
23 issue that he should have gotten the deed of trust on the
24 property, that similarly would have been under water.  So,
25 there is no distinction as to whether it's one third or more

11

1 than one third.  In her mind, obviously, she had a one third
2 interest --
3            THE COURT:  Well, let me stop you.  In reading the
4 complaint, it looks like -- one of the complaints, as far as
5 727 is listed as unsecured --  he had -- everybody agrees,
6 including in the pretrial order, that there never was a trust
7 deed.
8            MR. HAGEN:  Correct.
9            THE COURT:  So, it was unsecured.
10           MR. HAGEN:  Clearly, it was unsecured.  No
11 dispute.  And she made payments of interest for a year.
12 That's in the pretrial as well which would lead one to
13 believe that her intent clearly was to develop the property.
14 I think everybody knows what happened to the real estate
15 market between 2007 and 2008, and by 2008, it wasn't feasible
16 anymore.  Her declaration says that the contiguous parcel was
17 allowed to basically go back to the seller financed lender,
18 and that she's holding on to this property while she can
19 because there's a little bit of cash flow hoping that maybe
20 the market will turn around.
21           There's no evidence whatsoever that there was any
22 misrepresentation or fraud, and again, it's the Plaintiff's
23 burden on both the 727 and 523 causes of action, and they
24 have wholly failed to meet even the most basic element of
25 that burden.  Therefore, I would ask that judgment be --

1           THE COURT:  And what about 523?
2           MR. HAGEN:  Well, the same thing.  On the 523,
3 they're saying it should have been secured.  Well, they admit
4 it wasn't secure.  And even if it was secured, it would have
5 been second behind the impact of $743,000 mortgage.  Clearly,
6 it wouldn't have made any difference in today's day and age
7 whether it was secured or unsecured because in essence it's
8 unsecured because the value is half of what the loan is.
9 Second, if they're inferring that she never intended to pay
10 it from the outset, the pretrial order says that she made
11 interest payments for a year each and every month following
12 the signing of the note.  And that would be wholly consistent
13 with the idea that her intent was to develop the property.
14 Only did later facts and circumstances change which made
15 development impossible, which also made paying the note
16 impossible as well.
17           She let go of one of the properties.  She stopped
18 paying the note, and she's barely holding onto this property
19 but did disclose the interest from it, did disclose the
20 expenses associated with it more than adequately in her
21 schedules.  I just don't believe that they've even met the
22 most bare element of their burden.  I think judgment should
23 be granted for the Defendant on both the 727 and 523.
24           THE COURT:  Okay. You get the next to the last
25 word.  I get the last word, but if you want to as Plaintiff.

                                                                13

1           MS. KEUSSEYAN:  The only thing I'd like to add is
2  for the 523 is the reason it's unsecured is it should have
3  been secured.  One of the Plaintiff's contention is that from
4  the outset --
5           THE COURT:  Well, he says it was.  You said no,
6  that wasn't an agreement.
7           MS. KEUSSEYAN:  Well, if you look at the straight
8  note that was submitted along with the complaint it says it's
9  a straight note secured by a deed of trust, and all along
10 Plaintiff was under the impression that she was going to be
11 recording a deed of trust.  I understand it dragged for four
12 years, but they had a personal relationship during that time,
13 and he just kind of let it go.  But, he should be treated as
14 a secured creditor.  The fact that the property is upside
15 down today she's hanging onto it.  It doesn't mean it's going
16 to be upside down always.  At some point in time, if you were
17 the secured creditor, like he believed he was or would have
18 been had she filed the deed of trust when she represented
19 that she would, at some point in time the property will not
20 be upside down and he may have some secured interest in the
21 property if he's considered a secured creditor.
22          THE COURT:  Okay.  Thank you.  Let me ask you
23 quickly on that last point, Mr. Hagen, about the trust deed
24 and all.
25          MR. HAGEN:  Well, there is no evidence in the

14

1 record.  I mean my personal belief is that --
2          THE COURT:  Well, not your personal belief.
3          MR. HAGEN:  They took a form off the Internet or
4 out of a stationary store that had that language already on
5 there and they signed it.  I don't think there was --
6          THE COURT:  I'm trying to remember what your
7 client said about the declaration.  I had it.  Let me find
8 it.
9          MR. HAGEN:  Okay.  Paragraph nine of her
10 declaration says:
11          "Garcia, hoping to get involved in the
12          project as the general contractor,
13          offered to loan money toward the project
14          if he would be hired as the general
15          contractor.  I agreed.  He never asked
16          and I never promised any collateral for
17          the loan.  I did intend to hire him as
18          the general contractor if the project
19          were ever to get to that stage, but it
20          never got there."
21          THE COURT:  All right.  I'm going to rule in favor
22 of the Debtor.  I recognize this last point -- first of all,
23 on the 727 action, the -- I think Mr. Hagen is quite correct.
24 This Debtor has disclosed much more than normally debtors
25 would.  It is true that the official record says one thing

15

1  but she's disclosed everything, and there's no reason not to
2  accept what she said.  And if anybody, including you wanting
3  to check, to see what about these other folks had interest it
4  was disclosed, it would be pretty unusual to put that in
5  there.  Anybody could have checked with them.  The only
6  contention is the security interest, and this is a form.  As
7  far as the security interest, there is a dispute about that
8  but in this case, I don't think it really makes a difference,
9  made a difference and I don't think that I would base a
10 nondischargeability of this nature based just on that.
11         The rest of the case was interesting, and these
12 are always unfortunate cases.  Clearly, the Plaintiff
13 refinanced the house, gave $80,000, with the hopes of being
14 hired.  But, I'm not convinced from the facts before me that
15 it wasn't anything other than described by the Debtor that
16 things went bad for a lot of people, and the Debtor simply
17 couldn't make the payments, tried to make the payments but --
18 I see a lot of fraud cases in this Court, and this doesn't
19 seem to be one that stands out in the sense that it seems it
20 was clearly efforts by both sides, clearly the Plaintiff, and
21 I think the Defendant as well.  But, I don't think on the 523
22 that there would be any material misrepresentations.  So, I'm
23 going to rule in favor of the Debtor on the 523 as well.
24 Thank you both very much.
25         MS. KEUSSEYAN:  Thank you.

```
                                                                  16
 1           MR. HAGEN:  Thank you, your Honor.  I'll prepare
 2  and lodge an order.
 3           THE COURT:  Yes, thank you.  I'd appreciate it.
 4  And if you wish, I've stated on the record it's not necessary
 5  to prepare findings of fact and conclusions of law unless you
 6  want them.  I've stated on the record basically why I'm doing
 7  what I'm doing, and the Federal Rules of Bankruptcy Procedure
 8  provide that I can just simply state it on the record.  So,
 9  there's no need to file --
10           MR. HAGEN:  I'll make a simple order.
11           THE COURT:  All right.  Thank you.
12           MS. KEUSSEYAN:   Thank you.
13           MR. HAGEN:  Thank you, your Honor.
14      (Proceedings concluded.)
15
16           I certify that the foregoing is a correct
17  transcript from the electronic sound recording of the
18  proceedings in the above-entitled matter.
19
20  /s/ Holly Martens_____         7-30-12_____
    Transcriber                      Date
21
22
23
24
25
```